UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSHUA ERROL MIX,

            Petitioner,                    Case No. 1:23-cv-712

v.                                           Honorable Jane M. Beckering

MICHAEL BURGESS,

            Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.      Factual allegations**

Petitioner Joshua Errol Mix is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility in Manistee, Michigan. On February 23, 2018, following a three-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d, assault with intent to commit sexual penetration, in violation of Mich. Comp. Laws § 750.520g, kidnapping, in violation of Mich. Comp. Laws § 750.349, domestic violence, third offense, in violation of Mich. Comp. Laws § 750.814, and ethnic intimidation, in violation of Mich. Comp. Laws § 750.147b. On April 9, 2018, the court sentenced Petitioner as a fourth habitual offender to prison terms of 30 to 45 years for CSC-I, 25 to 40 years for CSC-III, assault with intent to commit sexual penetration, and kidnapping, 6 years, 4 months to 40 years for domestic violence, third offense, and 3 years, 10 months to 15 years for ethnic intimidation. The MDOC lists Petitioner's "earliest release date"—the date he is first eligible for parole—as February 16, 2048, and his maximum release date—the date he will complete the maximum terms of imprisonment—as February 16, 2063. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=422981 (last visited Aug. 17, 2023).

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The victim met defendant in February 2016. The victim testified that after they started dating, defendant became jealous and possessive. According to the victim, defendant started having "episodes" during which his personality would change. At first the episodes were monthly, but by the end of their relationship, the episodes were daily. During the episodes, defendant verbally and physically abused the victim.

2

The victim recalled an incident that occurred in a hotel room in March 2017 when defendant "flipped" and threw the victim's phone across the room. He also threw a lamp at the victim, and it hit her. The victim left the hotel room and went to the lobby to call a cab home. The police were called to investigate what happened, but the victim did not disclose the incident to the police because she was embarrassed.

The victim recalled another incident that occurred around April 15, 2017. The victim went to defendant's apartment while he was sleeping. When he woke up, he could not find his cell phone, and he accused the victim of taking it. He then hit the victim hard on her back.

There was another incident that occurred sometime between April 19 and April 25, 2017. The victim arrived at defendant's apartment while defendant was intoxicated. Defendant became angry with the victim and went to shower, at which point the victim tried to leave. But defendant heard her leaving, and came out of the shower naked and grabbed her keys. He then threw the victim onto the couch, held her down with his knees, and started to masturbate on her. The victim thought she was going to pass out or that defendant was going to kill her.

Defendant eventually took off the victim's pants, but the victim held the front of her vagina so defendant could not penetrate it. Defendant grabbed the victim and moved her onto his bed, which was near the couch because defendant lived in a studio apartment. The victim continued to hold her vagina while on the bed, and she begged defendant to stop. Defendant rolled the victim over and penetrated her anally while the victim continued begging him to stop. After defendant finished, he rolled off of her and fell asleep. The victim left defendant's apartment and returned to her own apartment. She had blood in her underwear because her anus was bleeding.

That same morning, the victim went to work and told her coworker, Jennifer Greathouse, what defendant did. Greathouse recounted at trial that the victim said that defendant had sodomized her, and that the victim's whole body was shaking.

On the same day that the victim told Greathouse what happened, defendant called the victim to ask why she left his place, and she told him that she left because he raped her. Defendant was remorseful and blamed the alcohol. Defendant and the victim exchanged numerous text messages in which they discussed what happened the night before. Screenshots of those text messages were entered into evidence at trial. Defendant also sent the victim a video of him masturbating and laughing. The victim testified that even after defendant sexually abused her, she wanted to make her relationship with him work because she still loved him. Their relationship nevertheless ended sometime before July 6, 2017, because defendant started seeing someone else.

On July 6, 2017, the victim decided to report what defendant did to his probation officer, Steve Church. Church corroborated the victim's testimony of what she said defendant did. Church described to the victim how defendant abused his first wife,

3

and before Church could say what he did to his second wife, the victim stopped him saying that she did not want to know. Church encouraged the victim to report defendant to the police.

On July 7, 2017, the victim reported the incident to a Berrien County Detective Lieutenant. The detective realized that the victim reported the incident to the wrong police station and sent her to the Chikaming Township Sheriff's Department. Caleb Slavens, the Chikaming Township Patrol Sergeant, interviewed the victim. During the interview, the victim read Sergeant Slavens her text-message exchanges with defendant, and Sergeant Slavens requested that she save those text messages, which she did.

*People v. Mix*, No. 343920, 2020 WL 359628, at *1–2 (Mich. Ct. App. Jan. 21, 2020) (footnotes omitted).[1]

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals, raising three issues relating to ineffective assistance of trial counsel. (*See* Pet., ECF No. 1, PageID.14.) By opinion issued Jan. 21, 2020, the court of appeals rejected Petitioner's challenges and affirmed the trial court.

Petitioner, again with the assistance of counsel, filed an application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered September 29, 2020. *People v. Mix*, 948 N.W.2d 561 (Mich. 2020).

Petitioner returned to the trial court and, on December 14, 2021, with the assistance of present counsel, filed a motion for relief from judgment raising the same issues he raises in this petition. (*See* Pet., ECF No. 1, PageID.3, 5; Attachment A, ECF No. 1-1, PageID.14–15; Mot. & Br., ECF No. 1-2, PageID.76–98.) The trial judge announced his resolution of the motion at a

---

[1] "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). The Court notes further that the issue raised by Petitioner relates primarily to "other acts" evidence in the form of testimony relating to Petitioner's treatment of his ex-wives. Although Petitioner might otherwise contest the credibility of the victim's testimony, his habeas issue does not depend on such a contest and he does not appear to take issue with the state appellate court's account of her testimony.

hearing on May 18, 2022, denying Petitioner's request for relief. (Mot. Hr'g Tr., ECF No. 1-2, PageID.99–108.) The trial court memorialized that decision in an order entered June 14, 2022. (Trial Ct. Order, ECF No. 1-2, PageID.109.)

Petitioner sought leave to appeal the trial court's denial of relief, first in the Michigan Court of Appeals and then in the Michigan Supreme Court. Those courts denied leave by orders entered January 29, 2023, and June 27, 2023, respectively. (Mich. Ct. App. Order, ECF No. 1-2, PageID.142; Mich. Order, ECF No. 1-2, PageID.176.) Promptly thereafter, Petitioner filed his habeas corpus petition raising the following ground for relief:

> I. The trial court's rulings on "other acts" evidence, compounded by trial counsel's ineffective assistance, denied defendant a fundamentally fair trial.

(Pet., ECF No. 1, PageID.5.)

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).[2] An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of

---

[2] "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications." *Bell*, 535 U.S. at 693-94.

5

the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

Although Petitioner presents his habeas challenge as one issue, it has multiple distinct layers. At the very core of Petitioner's claim he argues that his trial was rendered fundamentally unfair by the admission of "other acts" evidence.[3] Petitioner contends that the trial court's admission of such evidence violated the Michigan Rules of Evidence and was unduly prejudicial and, therefore, violated his right to due process. According to Petitioner, that core flaw was exacerbated by trial counsel's rendering of ineffective assistance by failing to object to some of the most prejudicial examples of the testimony that came in as part of the "other acts" evidence. And finally, Petitioner's claims that on his direct appeal, appellate counsel rendered ineffective assistance by failing to raise trial counsel's ineffective assistance relating to the "other acts" evidence. The Court will address Petitioner's claims in that order.

---

[3] Petitioner objects generally to the admission of "other acts" propensity evidence; but he acknowledges that at least some of this evidence would have been properly admitted. *See, e.g.*, (Mich. Supreme Ct. Br., ECF No. 1-2, PageID.157, n.9 (stating "[u]nquestionably some of the testimony was admissible under MCL 750.27b").). But Petitioner declined to draw lines separating the evidence properly admitted and the evidence that should have been excluded. *See* (*Id*. (stating "a detailed parsing of what particular bits of testimony should have been excluded will not be attempted here-rather, it suffices, in the authors' view, to say that at some point, evidentiary saturation was reached (and passed) . . . ").). For purposes of the core claim regarding the admissibility of "other acts" evidence, the Court will address the entire category of evidence. The Court will consider "particular bits of testimony" when evaluating the second layer of Petitioner's challenge: trial counsel's ineffective assistance for failing to object.

A.      **"Other Acts" Evidence**

The "other acts" evidence consisted of reports regarding Petitioner's abusive conduct from the victim, Petitioner's first wife, and Petitioner's second wife.[4] The prosecution sought admission of the evidence under Michigan Compiled Laws § 768.27b. The statute provides that,

> in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan Rule of Evidence 403.

Mich. Comp. Laws § 768.27b. Michigan Rule of Evidence 403, in turn, states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Mich. R. Evid. 403.

The trial judge determined that evidence regarding Petitioner's conduct with regard to his second wife and Petitioner's pre-offense conduct with regard to the victim were admissible under the statute.[5] (Br., ECF No. 2, PageID.178–180.) The trial judge determined that testimony from Petitioner's first wife regarding Petitioner's conduct would not be admitted because that conduct did not fit within the 10-year "look back" window permitted under the statute, Mich. Comp. Laws § 768.27b(4). (*Id.*, PageID.180.) Nonetheless, the judge permitted the prosecutor to ask the victim

---

[4] Petitioner details the testimony he found objectionable in the briefs he filed in the state trial court, court of appeals, and supreme court, (Trial Ct. Br., ECF No. 1-2, PageID.82–83, 86–96; Mich. Ct. App. Br., ECF No. 1-2, PageID.118–122, 124–131; Mich. Supreme Ct. Br., ECF No. 1-2, PageID.152–154; 157–164), as well as the brief Petitioner filed in support of his habeas petition, (Br., ECF No. 2, PageID.178–180, 183–194).

[5] During the trial, the judge did not expressly address the limits of Rule 403 in permitting admission of the evidence under the statute. Nonetheless, the judge did explain, as part of his ruling rejecting Petitioner's collateral attack, that he conducted the analysis required by the rule when he determined the evidence was admissible under the statute. (Hr'g Tr., ECF No. 1-2, PageID.103–107.) Moreover, the trial judge also made clear that the evidence was admissible under Michigan Rule of Evidence 404(b). (*Id.*)

9

about the Petitioner's treatment of his first wife because reports of that conduct had prompted the victim's full disclosure of Petitioner's treatment of the victim. (*Id*.) The judge advised the jury that the victim's testimony regarding Petitioner's treatment of his first wife should not be considered for the truth of the reported conduct, but only to explain why the victim came forward when she did. (*Id*.)

Petitioner claims that his trial was rendered unfair—and thus violative of his due process rights—because the trial judge erred in his determination that the evidence was admissible under Mich. Comp. Laws § 768.27b and/or Michigan Rules of Evidence 403 and 404. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Of course, it is not inconceivable that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. That is Petitioner's argument: that propensity evidence like that offered against Petitioner is inherently unfair. But "state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

10

fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts' wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

That latitude is increased further by the deferential standard of review under the AEDPA. This court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue. Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681

11

(1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.[6]

Because there is no clearly established federal law holding that "prior bad acts" or propensity evidence violates due process, Petitioner cannot demonstrate that the trial judge's rejection of his claim concerning the admission of "other acts" testimony regarding domestic violence is contrary to, or an unreasonable application of, clearly established federal law.

### B.      Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as

---

[6] Petitioner cites *Old Chief*. (Br., ECF No. 2, PageID.183.) As noted above, however, the *Old Chief* Court did not address the "other acts" issue in constitutional terms. Indeed, other than a citation to *Strickland v. Washington*, 466 U.S. 668 (1984), in connection with Petitioner's argument regarding ineffective assistance of counsel, Petitioner does not cite any clearly established federal law in his brief.

12

they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The trial court rejected most of Petitioner's ineffective assistance of trial counsel claim on the first *Strickland* prong. The court concluded that counsel's failure to object to the admission of the other acts evidence was appropriate because the evidence was properly admissible under Michigan Compiled Laws § 768.27b and Michigan Rules of Evidence 403 and 404(b). (Mot. Hr'g Tr., ECF No. 1-2, PageID.103–107.) That determination—that the evidence was properly admitted under state law—binds this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (stating that "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). If counsel had objected to admission of the evidence, the objection would have been overruled as meritless. Failure to raise a meritless objection is not professionally unreasonable. *See, e.g.*, *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

The trial court suggested that "[t]here might have been a couple [of challenges] in there that would have been sustained." (Mot. Hr'g Tr., ECF No. 1-2, PageID.107.) In much the same way that Petitioner declined to identify the "other acts" testimony that was admissible, the trial court did not identify the "other acts" testimony that might have been excluded based on a sustained objection. But the court did note that there were not "very many of those" and that they were "around the edges." (*Id.*) The court specifically determined that most of the testimony that Petitioner describes as the "parade of horribles" was properly admitted. (*Id.*) Because most of the

13

"other acts" testimony was admissible, the trial judge concluded that even if counsel had objected, and even if those objections had been sustained, the jury would not have reached a different result.

To prevail on this claim Petitioner must show that the trial court's determination was contrary to, or an unreasonable application of, the clearly established federal law of *Strickland*. In evaluating prejudice, the trial court considered whether Petitioner had demonstrated "a reasonable probability the result of the trial would have been different." (Mot. Hr'g Tr., ECF No. 1-2, PageID.103.) That is exactly what *Strickland* requires: "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe

14

> such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the state court applied the correct standard—here, the second prong of *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Strickland*.[7]

The Supreme Court has explained that an unreasonable application of clearly established federal law

> must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103], 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011).

*White*, 572 U.S. at 419–20. The Supreme Court has described the standard as "difficult to meet . . . because it was meant to be." *Harrington*, 562 U.S. at 102. The Sixth Circuit has similarly commented on the difficulty of satisfying that standard:

> This standard is a heavy burden for a petitioner to satisfy. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [*Harrington*, 562 U.S. at 102]. Indeed, "so long as fairminded jurists could disagree on the correctness of the state court's decision," the law precludes this court from granting habeas relief. *Id*. at 101, 131 S. Ct. 770 (internal quotation marks and citation omitted).

*Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019). Petitioner has not met the standard.

The trial judge explained that the crux of the "other acts" testimony, the "parade of horribles," was admissible. The peripheral issues of which Petitioner complains—for example,

---

[7] Petitioner might also overcome AEDPA deference if the state court's resolution was based on an unreasonable determination of the facts, 28 U.S.C. 2254(d), but he does not make that argument.

15

testimony disclosing that Petitioner's second wife had been recently widowed when she started dating Petitioner, that she suffered nightmares and PTSD because of Petitioner's abuse, (Br., ECF No. 2, PageID.184–186)—appear to be of limited significance compared to the descriptions of abuse that fell within the realm of admissibility under the state statute and rules of evidence.

Although it is immaterial whether this Court agrees with the state court's application of clearly established federal law, the Court concludes that the state court's determination on the second *Strickland* prong was eminently reasonable and that most, if not all, fairminded jurists would agree. Accordingly, Petitioner is not entitled to relief on his claim that trial counsel rendered ineffective assistance.

### C. Ineffective Assistance of Appellate Counsel

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

As thoroughly discussed above, Petitioner's claim of ineffective assistance of trial counsel lacks merit. Where a "claim of ineffective assistance of trial counsel lacks merit, . . . appellate

counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (stating that "[i]f trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." (footnote omitted)). Therefore, Petitioner cannot demonstrate that the trial court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland* and he is not entitled to relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   August 31, 2023                              /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge